Go ahead with the next one? Mm-hmm. Okay. That was awful quickly, huh? Mm-hmm. Where'd everybody go? The next case is Teresa Phillips v. Legacy Cabinet. And L. William Smith is here for Appellant Phillips. Christine Hart is for Legacy Cabinet. And why don't we wait until everybody's out of the courtroom, Mr. Smith, and you can begin your argument. May it please the Court, this appeal is about what should happen after a plaintiff successfully navigates the McDonnell-Douglas framework in an employment discrimination case. At the prima facie stage, the trial court correctly found that Ms. Phillips had established a prima facie case of discrimination by pointing to two African-American comparators who spoke up in the exact same meeting that she did when their boss told them they would have to work on Sunday. Three employees spoke up, Ms. Phillips, who's white, and Derek Stockdale and Tavia Craig, who are black. Mr. O'Neill took Ms. Phillips to the office and terminated her employment after this meeting. Stockdale and Craig received no discipline. In addition to correctly finding that she'd established a prima facie case by pointing to those two comparators from her exact same incident, the court also correctly found that she'd established pretext. The court found that she'd established pretext of something because a reasonable jury could believe that her boss was lying about the conduct that he claims justified her termination. A swearing match, essentially, that had to be decided by a jury. But the court also reasoned that she had not shown discrimination from her incident and that, therefore, legacy was entitled to summary judgment. Let me ask you something. With respect to the comparators, you're arguing that it's Mr. Stockdale and Mr. Craig. You're not arguing that Shana Gambles is a comparator, are you? No. We're focusing specifically on Stockdale and Craig, and that's what the district court was correct in focusing on with the prima facie case. We also have other comparators from the written disciplines, three in gross, who were also disciplined by O'Neill, who also engaged in allegedly insubordinate-type conduct. But the best comparators in this case are the two from her very same incident, and that's why the court's finding that she had not produced evidence of discrimination from her incident is so jarring. This really comes down to pretext. Is there enough evidence of pretext based on race? The only thing that you're relying on are the comparators. There's nothing else, right? There were two African-Americans who also were insubordinate, and they weren't fired, and I was fired. It's just the comparator evidence, and that's it, right? Well, not for pretext in general, Your Honor. There's a huge swearing match between Plaintiff and her boss. I invite you to look at her declaration where she completely disputes this testimony. That doesn't help you. That hurts you. Because there was no complete swearing match between the person who fired her and the African-Americans, but there was a complete swearing match between the person who fired her and your client. Actually, by swearing match, I think I misspoke. What I mean is two disputed stories, two completely disputed stories supported by sworn testimony on each side. Plaintiff contends that she was not, and she testified that she was not profane, not disrespectful, that she did not keep fighting with him. A reasonable jury could find that her conduct was really no different from the conduct of Tavia Craig and Stockdale from that same meeting. So what is she relying on to establish pretext? Just the two comparators, period. That's it, right? No, Your Honor. Pretext is, number one, the factual dispute over the conduct that her boss contends justifies her termination. But then when we go to pretext of something, what is it pretext of? We're looking at the comparator evidence. And I want to address Flowers v. Troop County because that's the opinion that the trial court really relied on in saying, well, pretext isn't enough. You have to have pretext of something. In order to establish a prima facie case, you've got to show that similarly situated employees were treated differently, right? Yes, Your Honor. So you're relying on the same evidence to establish pretext that you rely on to establish the last element of a prima facie case. I'm not aware that we've ever done, that any court has ever done that. Your Honor, we have cited in our brief, we've cited 11th Circuit opinion saying you can use the evidence of the prima facie case, you can use that again at the pretext stage. If you look at Levy v. Safedry, which two members of this panel were on, that's a case that interpreted Flowers. In neither Flowers nor Levy did the plaintiff have comparator evidence. You're talking about Wilson v. B.E. Arrow? I'm talking about Levy v. Safedry, Your Honor. Okay, because I think what we've said is that comparator evidence is especially relevant to assuring a pretext. But you've got to have a little bit more than what you established when you proved your prima facie case, don't you? I don't think you do, Your Honor, but we do in this case. What the court said in Levy v. Safedry was, and they didn't have comparators and Levy v. Safedry didn't have comparators that were admissible in the Troup County, Georgia case. What the court said was that the plaintiff in Levy v. Safedry, because they didn't have comparators, had not established pretext of race discrimination. But what two members of this panel said was that the plaintiff in Levy v. Safedry did have comparators, quote, whose more favorable treatment could support a reasonable jury's inference that the defendant's decision to fire the plaintiff was pretext of race discrimination. That's exactly what we had here and what they didn't have in Lee v. Flowers. So to go back to what you said when you began your argument, the judge says, well, you may have established pretext at the third stage of McDonnell v. Douglas, but you haven't established pretext based on race. What's your response to that? Your Honor, our argument is that comparator evidence is evidence of race discrimination. That's what this court stated in Lewis. Well, that's what I keep asking you. You're just relying on the comparator evidence, right? Well, when we're talking about pretext and pretext of something, pretext is evidence that the employer's explanation is false, and we have, again, two different stories. Pretext of race discrimination, we go to the comparator evidence, and that's evidence discrimination consists of treating like cases differently, and that's what Lewis also says. It's not a prima facie case of something. It's a prima facie case, quote, of something in particular, namely unlawful race, unlawful discrimination. Maybe your strongest argument might be that there's a mixed motive. Well, Your Honor, I think to the extent that the jury concluded that speaking up in a meeting could be a reasonable grounds for termination here, a reasonable jury could still look at the comparator evidence and believe that race remained at least a motivating factor in that decision based on the fact that Ms. Phillips was pulled into the office and fired, and the two comparators received no discipline. I think a reasonable jury could conclude that, well, even if he was legitimately singling her out for discipline for speaking up at the meeting, he chose to do that for her and not the two African-American comparators, and so race could be a motivating factor still under the mixed motive framework. Let me ask you something about when she was called into Mr. O'Neill's office during the Saturday meeting. Doesn't that conduct provide a nondiscriminatory grounds for her termination? What's your response to that? Well, the response is that a reasonable jury could find that there was not inappropriate conduct in that meeting. She gave a declaration in which she disputed his account of the various offensive things he said she said and did during that meeting, and so a jury's got to sort out what really happened there. Based on our version of the facts, the triggering event was really the three employees speaking up in the meeting. He chose to pull her into the office and terminate her, and essentially, under her testimony, losing his temper, going off on her. And so we believe a reasonable jury could say that she's, well, like the trial court held, similarly situated to these other two employees in her meeting. Right, and of course, even though there are disputes, we have to take the facts in the light most favorable to your client. So there are disputes with respect to whether she said that's stupid, you're stupid. We're required, or the trial court is required, to take the facts in the light most favorable to your client. Yes, Your Honor, and in the light most favorable to my client, the conduct that triggered her termination was simply speaking up and voicing dissent in this meeting. Well, but Legacy says it was not just that. It was her behavior at the meeting, but also her supposedly insubordinate comments after being suspended, and Ms. Phillips does testify that after she was suspended, Mr. O'Neill mentioned the gift card, and she said you could have it back. Would that be enough to support Legacy's proffered reason for firing her? No, Your Honor, because I believe the material facts supporting Legacy's reason, again, were addressed in Derek's testimony, insubordination is the broad reason. But if you look at the factual circumstances that he's describing in detail and that she's rebutting in detail in her declaration, a reasonable jury could conclude that he invented this as a pretext. And in terms of the gift card, I don't think anybody's saying that that was the tipping point in the termination decision. But your comparators, Stockdale and Craig, they only go to the meeting aspect, not the subordination, right? They do, Your Honor, because she disputes that insubordination occurred, but also they were insubordinate in the meeting. In this testimony, they were using profanity. They were saying, I wouldn't come to work. And so, yes, they were insubordinate under the plaintiff's version of the facts in that meeting. Doesn't the record, the disciplinary record as a whole, reflect that O'Neill disciplined both black and white employees for insubordination of various kinds? I'm glad you brought that up, Your Honor. The court decided that looking at records, 31 records of employees who were disciplined but not fired, and he said, well, he disciplined 17 employees, 11 white African-American employees, 11 white employees. The court went beyond defendant's arguments in the reply brief and held that this disproved discrimination. But plaintiff had no burden, first of all, to prove systemic discrimination. Second of all, when you look at the disciplinary records, fully, and I know I'm over my time, but fully 19 of these individuals were disciplined for attendance, which was handled by HR in this case. Those records aren't probative of anything. The court went beyond defendant's arguments in kind of using that to negate pretext in prima facie case. And I'll step down now and reserve the rest of my time. Thank you. All right. Thank you, Mr. Smith. Ms. Hart. Good morning, Your Honors, and may it please the court. Christine Hart on behalf of the Appley Legacy Cabinets. Your Honors, at all times the plaintiff retains the ultimate burden of persuasion of convincing the court that she has been a victim of intentional race discrimination. Here the only evidence she presents other than her own testimony regarding her account of what happened both during the initial huddle when she was pulled out and asked to go to the office, and then later on when it was just her and Mr. O'Neill, as well as another supervisor, Shane Hanna, and then later again when it was just her and Mr. O'Neill and he decided to make the termination decision. The only evidence there is her own testimony regarding what happened. Like Judge Pryor referenced, the two comparators, Stockdale and Craig, were only there for the first part of that interaction. But if we take the evidence in her favor, which we have to do at this stage, what does her testimony reflect about the insubordination, supposed insubordination? Your Honor, here is my account as far as taking into account both sides, what the undisputed evidence here is. When Mr. O'Neill announced to the group during what they call a huddle that they would have to work the following day, which was not planned. It was a very busy time. I'm really talking about after she was called out of the meeting. Would you focus on that part of the record? Sure. She was asked to go to the office, and she was told that she would be quote, suspended until Monday. This was Saturday. She was told to think about it and come back Monday. During the walk to HR, as this was happening again, this was after she was pulled out, she was talking on the way that— And you're focusing on what she says, right? Yes. Okay, what does she say? It's not disputed. What she says is it's not fair that they have to work the next day. She keeps talking about how unfair it is. They go to the office. He tells her to come back Monday. As they're leaving the office, he references the fact that he had just given her a gift card a few days prior for good performance, and she says, well, you can have that gift card back. And as they keep walking is when there is suddenly kind of a critical moment where the testimony differs as far as what was said and when. Right, but we have to take it in the light most favorable to her, which is what I asked your colleague. We're required to. And I'm looking at her deposition where she says that, no, I didn't call you stupid. I said what you said was stupid. Yes, Your Honor. But the decision-maker also gets deference at that point at the pretext stage to be able to say this is what I believe she said. I thought that she said that this was stupid, this place was stupid, and this place is going to shit is what he claims that she said. And while we recognize that we take her version of the story here, we also are dealing with a supervisor's honest belief regarding what happened, which when we're determining at the last stage of the McDonnell-Douglas standard, has the plaintiff presented enough evidence to show that she was a victim of intentional race discrimination? We're looking at what other evidence does she have that could create this issue? She doesn't need. I guess that's what's troubling, at least troubling me, is it seems like the district court is requiring direct evidence of race discrimination, whereas she's relying on circumstantial evidence through the McDonnell-Douglas burden-shifting framework. So she doesn't need any direct evidence of discrimination. It seems like when the judge says with regard to pretext, there might be a pretext of something. There's no pretext because of race. You're not giving me anything race. She's already at step three. So she doesn't need any direct evidence. She just needs to have some evidence that casts doubt on the reason given by her employer for her termination. Well, Your Honor, I would contend that she does need more than just to question the nondiscriminatory reason at the third stage. She's still, it's the Flowers standard where you're asking for something on top of the issue of fact as to what actually occurred. And in response to the direct evidence... So doesn't the court already say, well, she's established pretext? Then he seems to go too far when he says, but there's nothing to connect it to the fact that you're white. It seems like the district court went a little too far that way. Why am I wrong about that? Well, Your Honor, the court... Shouldn't he stop at, well, you've established pretext, period? No, Your Honor. I would contend that what the district court, I think, either should have done or did do, depending on your reading of what the district court did at that stage, was they'd say, okay, well, she has created a weak issue of fact as to the reason for the termination decision. What other circumstantial evidence does she have at that stage to reach that, quote, new level of specificity that we need at the pretext stage to determine that a reasonable jury can determine that race was the reason? And that's where you can bring in these circumstantial remarks or comments indicating discriminatory intent that wouldn't meet the direct evidence standard that we typically require in a Title VII case, but certainly could be probative pretext of race discrimination. Right, but the district court says, I need something that establishes that this is because at the pretext stage, because you're white. And so, I mean, if that were the case, I mean, we've said in other cases that temporal proximity could be enough to establish pretext. In other words, that you were fired close in time, you know, after, you know, the conduct that gave rise to your being fired, and there's no connection to race there. So, I guess what I'm asking is, where is our law that says when at the pretext stage, you've got to tie it to your race? The only thing you have to do is to cast some doubt on the reason given by your employer for the termination, right? I disagree, Your Honor. Well, first, I disagree with the premise that temporal proximity in a basic race discrimination case would be enough. I mean, in a retaliation case, the plaintiff has demonstrated that he took a protective action. No, but we have precedent that's clear on that, that temporal proximity could be enough. Okay, well, moving off of that then, Your Honor, then my response, I would say, you know, the Reeves is pretty clear that, you know, you can make the issue a fact, but then you also have to show, you know, some other reason that it was race discrimination rather than any other reason. I mean, there could be all sorts of reasons for why that termination decision was made in the heat of the moment here. You have to tie it back to a protective characteristic in order to get to a jury question on that issue. Okay, but we have, for instance, Mr. O'Neill said in his deposition that three employees spoke up at the meeting, Ms. Phillips and two other employees, Mr. Stockdale and Mr. Craig. Shouldn't this be something that would go to a jury because a jury could infer race discrimination based on the fact that only Ms. Phillips, who's white, was called for further discipline. The other two, who were African American, were not. Doesn't that speak for itself? Your Honor, I think that evidence is probative. My response to it is, one, that if we're looking at, you know, depending on the standard that we apply here, you know, were they similar in all material respects? Well, what happened after she was pulled out of the meeting was quite material to the employment decision that was made. And so their paths diverged once she left to go with Mr. O'Neill and Mr. Hanna to be suspended. What she said after the fact is what the termination decision turned on. In addition to that, I would also argue that just having these two comparators, I mean, is that, I question whether that's enough given the precedent we have in this circuit in that typically you need some type of either remark or other evidence of discriminatory intent other than just the fact that she can point to two people in the room who might have engaged in similar conduct, which, again, was according to her own testimony, which I understand we have to take into account, of course. But all we have here is her account basically creating an issue of fact regarding what happened and also that these two people supposedly, according to her, were worse than she was. And at the pretext stage, we also get to take into account the decision-maker's belief and their state of mind as to, you know, making their personnel decision given we've got a tense situation, we've got that diverse workforce, and we've got an employee who will not let it go that she has to work. She is expected to work the next day. And when you have no other evidence suggesting discriminatory intent here, has she really met her burden of persuasion at the pretext stage? She testified at the meeting. She didn't even say anything. He said to her something like, you have a problem with this, and that's when she spoke up. How does that factor in? And then she spoke for one to two minutes. And another supervisor testified, and she cannot dispute this at the summary judgment level, that she kept going and that she was asked to stop talking, and she wouldn't stop, and so that's when she was pulled out. So while she quibbles about a lot of the details of what happened and what exactly she said, I mean, she doesn't dispute that she spoke up for one to two minutes, she was protesting, she didn't feel like it was right to work, and that she kept talking as she was pulled out of the meeting, pulled into the office to be suspended, and then kept talking again as the termination decision was made. But none of the supposed insubordination evidence would have come about had she not been called out of the meeting. Would you concede that? Yes, Your Honor. I mean, I would concede that the chain of events started during the huddle when she was asked to pull out. But it certainly wasn't the cause of why she was terminated. I don't think it's at all fair to say that, even based on the undisputed evidence here, that the decision to terminate her was not made until after she was pulled out, after she went to the office and was told to come back Monday, and then as they were leaving that office is when the termination decision was made. Let me ask you about the mixed motive theory. I understood you to be arguing that her position regarding pretext is inconsistent with the mixed motive theory of the case. Would you explain that? Yes, Your Honor. Our understanding of the case law here is that in order to bring a mixed motive case, you have to somehow agree or at least not dispute that there was a non-discriminatory reason for her termination. But she's never really contended here that she could have been fired or that it was appropriate to be fired. She's always disputed the fact that she's like, I didn't say anything and then I was fired. And so she has taken on the reason for her termination head on and tried to rebut it. So if we determine that a reasonable jury could not accept the employer's version of events, would you say that she's precluded from arguing that race was a motivating factor in her termination? Well, Your Honor, I would argue that under a mixed motive theory, she hasn't presented really any sufficient evidence to show that the termination decision was a motivating factor. Because at that point, the pretext is she falls away. And so all we have here then is these two comparators who, again, as I stated earlier, what happened to them was quite different than what happened to her after she was pulled away. And also, this is the only evidence we have on the record in this case. Setting aside some of this other somewhat weak record on other disciplinary actions I can talk about if the court would like me to. But what we're really dealing with are these two people, I think, are the important people to focus on. And this is literally the only evidence we have to consider in deciding whether or not she has a race discrimination claim, that all of these decisions were made because she was white. This court has repeatedly and emphatically held that, quote, employers may terminate an employee for a good or a bad reason without violating federal law. And while she denies some of the key comments she made to her supervisor in the moments before she was fired, there was an awful lot of evidence that was undisputed here regarding the instance that led to her termination. This didn't come out of thin air. It might be a matter of dispute as to the degree of what was said and the detail of what was said. But at the end of the day, there was no other evidence that there was a discriminatory action here. She was unhappy. Frankly, I think everyone was unhappy at the plant that day. And this termination decision was made. You agree there were no disciplinary actions or work performance actions with respect to her prior to this day? Yes, Your Honor, I do. And I would even contend that that's further evidence that this wasn't a targeted activity. There's no evidence here that he had it out for her. He described her as an otherwise good worker. He had given her a gift card a few days prior for good performance. She had been there for quite a long time, considering that this is a factory that makes cabinets. I mean, it's a high-turnover environment, and she had been there for about five years. But regardless, isn't this something that should go to the jury so the jury can make that decision and determine those credibility issues? Your Honor, I think the reason why this shouldn't go to the jury is because there's no other evidence here. We don't have comments. We don't have any type of pattern of behavior by our supervisor here. We've got a difficult workplace situation where there was a bad interaction and a termination decision was made. But you have two people of one race treated one way and a person of another race treated a different way. Well, Your Honor, I would contend that the evidence doesn't demonstrate that. After that, it wasn't that she was pulled out. That wasn't the adverse action here. Did that start the chain of events? Yes, of course. But it wasn't until she was taken back and she wouldn't let it go is when the termination decision was made. Thank you, Your Honors. All right. Thank you, Counsel. Mr. Smith, you've reserved some time for rebuttal. Thank you, Your Honor. I'm glad my friend here on the other side mentioned Reeves v. Sanderson-Plumbing because I think that's a key case in a number of respects. First of all, of course, it says that if you establish a prima facie case and show pretext, a reasonable jury can generally infer discrimination from that set of facts and that the case should generally go to the jury. Reeves goes on, though, to talk about some things that are important in considering at that point. Reeves says that whether judgment as a matter of law is inappropriate will depend on a number of factors, and these include the strength of the plaintiff's prima facie case and the appropriate value of the proof that the employer's explanation is false. We have an extremely strong prima facie case. We had 14 comparators that we identified, African-American employees who committed insubordination-type acts and were not fired. We had two who were just from the exact same incident, again, belying the court's belief that she didn't have any evidence of discrimination. I thought the record, though, reflected that there were more African-Americans fired than whites who were fired by this employer. Is that incorrect? It is incorrect, Your Honor. The tally of 31 disciplines that he looked at, 17 to 11, was people who had not been fired. All 31 of those people were treated more favorably than the plaintiff was because she was fired. Also of that tally, 19 of those 31 disciplines were attendants. HR handled attendants. Mr. O'Neill testified to that. It's just completely unprobative. So he fired how many black subordinates? On the summary judgment record that we have, Your Honor, the only person who was fired that we have in this record is the plaintiff who was white. We don't—he testified generally that he may have fired other people, but we don't have that, largely because there was a discovery dispute. They didn't want to produce disciplines, and the compromise was they would produce folks who were disciplined but not fired. But the record that we have, she is the only one who was fired by him. And so—and Reeves talks about the strength of the prima facie case. We never get comparators like we have in this case. We never get 14 comparators with two from the exact same incident. But it also talks about the probative value of the proof that the employer's explanation is false. And counsel talked about—in her testimony, she agreed that the comparative evidence is probative. We think it's extremely probative. But I think the crucial thing that she said was, quote, at the critical moment of termination, the testimony differs. In fact, it differs dynamically. Either the jury will believe my client or they'll believe Mr. O'Neill. There's no middle ground there. And that is very strong, very probative evidence of pretext. It's not some little quibble about whether somebody deserved a discipline or not or whether somebody broke a particular rule or not. This is two completely different versions of disputed facts that have to be resolved by a jury. And that is a very, very strong factual dispute to rest pretext on because there's simply no way to resolve it without resolving disputed facts. Reeves talks about a few other caveats where summary judgment might be appropriate, even if you show pretext. One is if there's some secret reason hiding out there that is nondiscriminatory. Maybe somebody engaged in union activity, they fired them for that, they don't want to admit it, so they've got a pretext. We don't have anything like that here. There's no hidden reason behind the pretext that came out in the record. And again, Reeves talks about if there's evidence that no discrimination occurred, undisputed conclusive evidence, no discrimination occurred, summary judgment could be appropriate. We don't have that here. Again, we just kind of have this, you know, we have our 14 comparators who committed insubordination-type offenses were treated more favorably than the plaintiff. The district court focused instead on these 31 individuals who were written up for all sorts of things without regard to factual relevance. Nineteen of those 31 were written up for attendance, which he wasn't even part of. This is not conclusive evidence of anything, much less under the summary judgment standard, interpreting the facts in the light most favorable to the plaintiff. It's certainly not conclusive evidence that no discrimination occurred. A jury could very well look at these disciplines and say, well, how is this relevant to this case where three people spoke up at the meeting, two were black, one was white, and the white employee was taken to the office and fired. We believe that evidence is very powerful for the jury, and we also believe that the court erred in denying, in granting summary judgment on the mixed motive theory as well, based on the comparative evidence. So in sum, the trial court's opinion should be reversed in its entirety. Thank you. All right. Well, the case probably should have been settled, but we'll decide the issues in the case. Thank you. The court is in recess until 9 o'clock tomorrow morning. All rise.